**Carl Post, OSB No. 061058**
carlpost@civilrightsoregon.com
**John Burgess, OSB No. 106498**
johnburgess@civilrightsoregon.com
Snyder, Post and Burgess
1000 SW Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| **JASON REINHARDT**, | Case No. 2:25-cv-01883 |
| Plaintiff, | **COMPLAINT** |
| v. | **TITLE II ADA** |
| **STATE OF OREGON, KAYCIE THOMPSON, and MARICA VENTURA** | Jury Trial Demanded |
| Defendants. | |

NATURE OF ACTION

1. This is a civil rights action brought pursuant to 42 U.S.C. § 12132 et seq. to redress Defendants' failure to conduct an assessment of Plaintiff's needs for an accommodation and provide Plaintiff with an accommodation for his disability.

**PAGE 1 – COMPLAINT**

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over Plaintiff's claims of violation of federal constitutional rights pursuant to 28 U.S.C. §§ 1331(a) and 1343 because the causes of action arise under Title II: 42 U.S.C. § 12182 et seq.. This Court has jurisdiction over Plaintiff's supplemental state law claims under 28 U.S.C. § 1367.

3.     Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of Oregon and because Defendants are subject to personal jurisdiction in the District of Oregon.

## PARTIES

4.     Plaintiff Jason Reinhardt is a citizen of the United States of America. At the time of filing of this action, Plaintiff has standing as he is in custody of the Oregon Department of Corrections (ODOC) at Two Rivers Correctional Institution (TRCI).

5.     Defendant State of Oregon operates Oregon Department of Corrections (ODOC) which is an agency of the State of Oregon. ODOC owns and operates correctional facilities in Oregon, including TRCI and is responsible for the inmates in its facilities.

6.     At all times material, Defendant Kaycie Thompson was the TRCI AIC ADA Coordinator and Defendant Marica Ventura was the Statewide AIC ADA Coordinator.

## GENERAL ALLEGATIONS

7.     Warren Roberts was the Chief of Medicine (at times titled Chief Medical Officer or Administrator) for ODOC since approximately December 7, 2020, until he was placed on administrative leave in December 2024 and terminated from his position on or about February 3, 2025. Roberts was responsible for final approval or denial of surgical and specialty

**PAGE 2 – COMPLAINT**

care and fired for misconduct relating to his job duties, including, but not limited to delaying medical care to inmates. Roberts provided oversight of all ODOC health services' medical professionals and provided care to AIC patients at all ODOC facilities.

8.      Thomas Bristol was at all times relevant a physician at ODOC medical services at TRCI.

9.      On April 3, 2023, around 9:15 pm, Plaintiff was setting up weights for a workout with his partner. He was doing an incline bench press and lifting 135 pounds. He was doing warmups. He went to rack the weight and thought he had racked both sides. He let go of the bar and the left side was not racked properly and the bar fell onto the left side of his face. He both heard and felt crunching. He was able to get out from under the weight. He went into the day room where TRCI staff took him from the institution to the Emergency Room at Good Shepherd Medical Center in Hermiston, Oregon.

10.     The following is a photo of Plaintiff taken at Good Sheperd on April 3, 2023:



**PAGE 3 – COMPLAINT**

11. While at the emergency room, he was seen by Dr. John Elliott. He received pain management, and a CT scan was done. They diagnosed Plaintiff with a traumatic head injury, fractured nose, fractured upper and lower orbital socket, fractured temple, fractured cheek, and an acute left zygomaticomaxillary complex fracture.

12. On April 4, 2023, Plaintiff was discharged in the early morning from Good Shepherd Medical Center back to TRCI. The after-visit summary stated to set an appointment with a specialist, Ashish A Patel, MD, DDS, within a week. Ashish Patel, MD, DDS specialty is Oral & Maxillofacial Surgery. After being discharged, Plaintiff was taken to the Medical Infirmary Area 1 at TRCI.

13. On April 4, 2023, Nurse Practitioner Patrick Maney requested approval for Plaintiff to see Dr. Patel for an assessment and treatment. Defendant Roberts and the ODOC TLC Committee denied the proposed treatment despite knowing it was medically necessary and that failure to provide timely treatment from a qualified specialist would result in increased risk of harm and increased pain and suffering by Plaintiff. Instead, Plaintiff was referred to by Dr. Richard A. Flaiz, MD FACS in Hermiston, Oregon, despite knowing that Dr. Flaiz was not qualified to provide medical care for Plaintiff's injuries.

14. On April 8, 2023, at 5:30 in the morning, Plaintiff woke up with new symptoms and had double vision, no peripheral vision, and his left eye was in severe pain.

15. On April 19, 2023, Plaintiff was completely titrated off Norco for pain management by medical staff.  Plaintiff did not request to be titrated off the prescription medication to help with pain management and was now receiving 400mg of Ibuprofen every eight hours for pain.

16. On April 20, 2023, at approximately 11-11:15am, Dr. Paul Vitt came to see

**PAGE 4 – COMPLAINT**

Plaintiff, and he brought a nurse along with him. At this point, Plaintiff had had no assessments done by any Nurse Practitioner or doctor at TRCI, or anyone outside the institution, other than his emergency room visit on April 3, 2023. Dr. Vitt checked Plaintiff's vision. Plaintiff expressed his concerns with his constant headaches, pain in his left temple and eye socket, double vision, blurred vision, light sensitivity, tremors, difficulty breathing through his nose, and lethargy. Plaintiff asked Dr. Vitt to document everything and Dr. Vitt took offense to that.

17. On April 20, 2023, at approximately 1:45 pm, Plaintiff spoke to the nurse and asked if the Ibuprofen dose he was currently taking (400mg every eight hours) could be increased to help with pain management. Plaintiff was told sometime later that Dr. Vitt denied the increase in Ibuprofen.

18. On April 21, 2023, Plaintiff was told by Nurse Bradshaw that the surgery he needed was outside of Dr. Flaiz's practice. Nurse Bradshaw told Plaintiff that he would be able to receive 400mg of Ibuprofen along with 650mg of Acetaminophen every 6 hours now for pain management.

19. On April 25, 2023, nurses came into the medical area and took photos of Plaintiff's face and said they were again taking his case to TLC.

20. On April 26, 2023, at approximately 11am, Patrick Maney, AGNP (Nurse Practitioner) at TRCI, came to see Plaintiff and brought 3 nurses with him. Plaintiff discussed his headaches, pain in his left temple and eye socket, double vision, blurred vision, light sensitivity, tremors, difficulty breathing through his nose, and lethargy. After the examination, Patrick Maney said that Plaintiff needed to be seen by Dr. Evers, the eye doctor at TRCI.

21. During the afternoon of April 26, 2023, Plaintiff was taken to see Dr. Evers inside TRCI and received an eye exam. Plaintiff's eyes were dilated, and his vision issues were

PAGE 5 – COMPLAINT

addressed. Plaintiff's left eye was not tracking properly, and his loss of peripheral vision, double vision, blurred vision, light sensitivity, pain in eye socket and temple were discussed. Dr. Evers said he would work with Patrick Maney because he believed if the bones in his eye socket were fixed his vision may improve. Dr. Evers gave permission for Plaintiff to be able to wear sunglasses indoors and outdoors for approximately three weeks due to his light sensitivity.

22. On May 1, 2023, Patrick Maney came to check on Plaintiff. He approved for Plaintiff to receive 50mg of Tramadol every six hours for six days, along with continuing 400mg of Ibuprofen and 650mg of Acetaminophen for pain management.

23. On May 4, 2023, Plaintiff was taken to see Dr. Bart Adams, an Ophthalmologist at East Oregon Eye Center in Pendleton, Oregon. Dr. Adams said that Plaintiff needed to be seen by an Orbital Surgeon, and that he believed there may be nerves or muscles in the eye that were being pinched.

24. On May 9, 2023, Plaintiff was taken to be seen by Dr. Matthew Black, a Maxillofacial Surgeon at the Columbia Basin Oral & Maxillofacial Surgeons Office in Kennewick, Washington. He discussed surgery and overall concerns with Plaintiff's vision issues. Despite Dr. Black noting the 5-week delay since injury and that the surgery needed to be completed as soon as possible, ODOC categorized Dr. Black's orders as "No Urgent Needs."

25. On May 16, 2023, Plaintiff had surgery at Kadlec Regional Medical Center with Dr. Matthew Black, DDS. Because Defendants denied Plaintiff timely medical care, Dr. Black had to rebreak the bones in Plaintiff's face, which was more painful than the original accident. Dr. Black said that his vision will most likely not come back because of the delayed surgery.

26. On May 17, 2023, Plaintiff returned from Kadlec to TRCI.

**PAGE 6 – COMPLAINT**

27. On May 22, 2023, Plaintiff was seen by Maney, NP.

28. On May 25, 2023, Plaintiff returned to the clinic for a follow-up regarding a continued blurred vision on the left side and some loss of peripheral vision.

29. On May 31, 2023, a post-op follow-up appointment with Dr. Black at Columbia Basin was approved, along with a recommendation for Dr. Evers to evaluate vision concerns.

30. On June 5, 2023, Plaintiff was seen by Dr. Maney, and it was recommended that he have a neurology consultation and brain MRI due to zygomatic fractures and continuing problems with tremors and balance.

31. As of June 11, 2023, Plaintiff's post-surgery symptoms, 68 days post injury, included mental fogginess, lacking balance, continued tremors, difficulty breathing, and left-eye pain.

32. As a result of the incident on April 3, 2023, Plaintiff has physical or mental impairment that substantially limits one or more major life activity, including writing, seeing, reading, concentrating, thinking, communicating, and working.

33. On January 14, 2024, Plaintiff requested accommodation for his disability. Defendant refused to process this request, claiming Plaintiff did not have a documented disability despite his medical records documenting his disability.

34. On February 23, 2024, Plaintiff again requested accommodation for his disability.

35. On February 25, 2024, Plaintiff again requested accommodation for his disability.

36. On June 5, 2024, Plaintiff's request for accommodation was denied again.

37. On May 12, 2024, Reinhardt filed grievance #TRCI_2024_05_046 defendant's

**PAGE 7 – COMPLAINT**

delay and denial of his ADA accommodation request. On November 12, 2024, Reinhardt's final appeal was denied.

38.     On June 10, 2024, Reinhardt filed grievance #TRCI_2024_06_043 with another appeal concerning his requests for ADA accommodations. On December 17, 2024, his final appeal was denied.

39.     Plaintiff has exhausted his remedies under the PLRA.

# FIRST CLAIM FOR RELIEF

## Disability Discrimination

### (Against Defendant State of Oregon)

### Count 1

### (Americans with Disabilities Act—Title II: 42 U.S.C. §12182 et seq.)

40.     Plaintiff re-alleges the prior paragraph as though fully set forth herein.

41.     Defendant is a place of public accommodation as that term is defined in 42 U.S.C. §12181(7)(F).

42.     Plaintiff is a "qualified individual with a disability" as that term is defined in §12131(2).

43.     At all relevant times, Defendant was aware of Plaintiff's physical disability.

44.     Defendant has damaged Plaintiff in violation of 42 U.S.C. §12132 and its accompanying regulations by committing the following discriminatory acts or practices:

    a.     By failing to conduct an informed assessment of Plaintiff's needs for accommodation;

    b.     Defendant failed to regularly provide Plaintiff with a NEO or secure notebook as accommodation for his disability.

**PAGE 8 – COMPLAINT**

  c. By failing to give primary consideration to and deference to Plaintiff's accommodation requests or failing to provide appropriate alternative accommodation taking into account the context in which the communication is taking place;

  d. By failing to make information available to Plaintiff regarding his rights under the ADA and § 504.

45. Plaintiff is entitled to a declaration that the Defendant violated Title II of the ADA.

46. Pursuant to 42 U.S.C. §§ 1988 and 2000e-5, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred.

47. Plaintiff is entitled to money damages.

## Count 2

### (Section 504 of the Rehabilitation Act of 1973)

48. Plaintiff re-alleges all relevant paragraphs as though fully set forth herein.

49. Plaintiff is a qualified individual with a disability or handicap under the Rehabilitation Act.

50. Plaintiff was otherwise qualified to receive the benefit of the services made available to clients or patients of Defendant.

51. At all times material, Defendant was and is a recipient of federal financial assistance for its programs and activities.

52. Defendant's actions and omissions as described above violated Plaintiff's rights under the Rehabilitation Act by excluding him or denying him the benefits of Defendant's services solely because of his disability.

53. Defendant's conduct showed deliberate indifference to Plaintiff's rights.

54. Defendant sustained emotional distress and damages due to Defendant's violation of the Rehabilitation Act.

55. Pursuant to Section 505 of the Rehabilitation Act, Plaintiff is entitled to compensation for her damages and an award of attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF

### Injunctive Relief

### Against individual defendants

56. Plaintiff continues to be in the custody of the Department of Corrections.

57. Plaintiff continues to be disabled and is unable to effectively communicate without accommodation.

58. Defendant failed to provide Plaintiff with a NEO or secured notebook as accommodation for his disability.

59. Plaintiff sues the individual defendants for injunctive relief in their official capacities.

60. The court should order that Plaintiff be provided the accommodation requested.

### PRAYER FOR RELIEF

Plaintiff prays that this Court will enter a Judgment against Defendants granting Plaintiff:

A. Economic and noneconomic damages against Defendants in an amount to be determined at trial.

B. Injunctive and Equitable relief.

C. Plaintiff's costs, expenses, and attorney fees in this suit; and

D. Any additional relief this court deems just proper, and equitable.

**PAGE 10 – COMPLAINT**

## JURY DEMAND

Plaintiff demands a trial by Jury.

Dated: October 14, 2025

                                                    **Snyder, Post and Burgess**

                                                   */s/ Carl Post*
                                                   Carl Post, OSB No. 06105
                                                   carlpost@civilrightsoregon.com
                                                   John David Burgess, OSB 106498
                                                   johnburgess@civilrightsoregon.com
                                                   Tel: (503) 241-3617 | Fax: (503) 241-2249
                                                   Attorneys for Plaintiff